IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

DEREK ROUSE, individually and o/b/o )
all other persons similarly situated, )
)
          Plaintiff, )
)   No. 4:22-cv-0204-DGK
vs. )
)
LANGUAGE LINE SERVICES, INC., )
)
          Defendant. )

## ORDER DIRECTING COUNSEL TO PROVIDE ADDITIONAL INFORMATION

This is a collective action lawsuit seeking to recover unpaid wages and overtime pursuant to the Fair Labor Standards Act ("FLSA"). Now before the Court is the parties' Motion for Approval of FLSA Collective Action Settlement. ECF No. 34. For the following reasons, the Court directs Plaintiff's counsel to supply additional information.

Although ordinarily employers and employees can settle their disputes without court approval, where, as here, an employee has brought a lawsuit directly against an employer for violating the FLSA, any settlement must be approved by the court in order for the settlement to have any res judicata effect. *Beauford v. ActionLink, LLC*, 781 F.3d 396, 406 (8th Cir. 2015) ("After commencing litigation, employees can waive their rights only if the parties agree on a settlement amount and the district court enters a stipulated judgment."); *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). To approve an FLSA settlement under 29 U.S.C. § 216(b), a court must find that: (1) the litigation involves a bona fide dispute over FLSA provisions; and (2) the proposed settlement is fair and reasonable. *Lynn's Food Stores*, 679 F.3d at 1355. Further, although the exact scope of court review of attorneys' fees in conjunction with an FLSA settlement

is somewhat unclear in the wake of the Eighth Circuit's recent decision in *Barbee v. Big River Steele, LLC*, where attorneys' fees and FLSA claims have been negotiated contemporaneously, the court must approve the attorneys' fees provisions to ensure they have been negotiated without regard to a plaintiff's FLSA claim, and that there was no conflict of interest between an attorney and his or her client. 927 F.3d 1024, 1027 n.1 (8th Cir. 2019).

The Court has no doubt this litigation involves a bona fide dispute over FLSA provisions. However, the proposed settlement contains several red flags, namely: (1) there is reversion provision and a clear sailing provision, (2) it is a claims-made settlement, and (3) there is evidence the settlement was made contingent on reaching a satisfactory award of attorneys' fees. And the Court lacks sufficient information to determine whether the proposed settlement is fair and reasonable despite the presence of these red flags.

Among the Court's concerns is that the proposed settlement is a claims-made settlement which also includes a reversion provision and a clear sailing provision on attorneys' fees.[1] Reversion provisions are disfavored in FLSA collective-action cases. *Vinsant v. MyExperian, Inc.*, No. 2:18-CV-2056-PKH, 2019 WL 2518143, at *3 (W.D. Ark. June 18, 2019) ("Reversion provisions are repugnant to the FLSA"); *see* 4 *Newberg on Class Actions* § 12:29 (5th ed. 2019) (noting reversionary funds have become so disfavored in class actions that their use has receded in the past decade). Courts object "to such provisions in claims-made settlements because they can be used as a collusive vehicle resulting in significant fees for class counsel, a low payout by defendants, and limited benefits to the class." Michael J. Puma & Justin S. Brooks, *Navigating Developing Challenges in Approval of Class and Collective Action Settlements*, 28 A.B.A. J. Lab.

---

[1] Under a clear sailing agreement, "the defendant agrees not to contest the amount awarded by the court presiding over the settlement as long as the award falls beneath a negotiated ceiling." William D. Henderson, *Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlement*s, 77 Tul. L. Rev. 813, 814 (2003).

& Emp. L. 325, 329 (2013). These effects are the "byproduct" of the "percentage-of-the-recovery" approach (which is effectively what is being used here), whereby "class counsel receives a percentage (twenty-five or thirty-three percent in most cases) of the maximum settlement fund," but the defendants' actual payout to class members is based on participation rates. *Id*. (emphasis omitted). If participation is low, the defendants receive a large reversion, which significantly reduces their total payout, while the Plaintiff's attorneys still receive their full fees based on the maximum settlement amount. Granted, the impact of the reversion is theoretically ameliorated here by the fact that this case involves an FLSA settlement where putative class members must opt-in to participate, and if they choose not to participate, they can theoretically bring claims later if the statute of limitations has not run on their claims. Thus, the reversion here is not quite as bad as a reversion in a Rule 23 settlement, because the class member could theoretically recover later. Even so, the presence of this "less bad" reversion provision suggests closer scrutiny of the settlement is appropriate.

The reversion provision here is particularly problematic since it is combined with a clear sailing agreement on attorneys' fees, thereby ensuring there will be no adversarial briefing to alert the court to potential issues. *See*, *e.g.*, *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) ("[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."); *see also Newberg on Class Actions, supra*, § 12:29 (noting "because class counsel's fees may be pegged to the size of the fund made available (prior to reversion), a reversionary fund may be a warning that counsel has undersold the class's claims."). This raises the specter that Plaintiff's counsel has a potential conflict of interest.

3

Additionally, the claims procedure—which requires each class member to submit a formal claim to receive a settlement check even though doing so apparently serves no purpose other than to lower participation rates—is a red flag. As a leading treatise has observed:

> The simplest and most effective method for getting damages to class members is to distribute the funds without requiring class members to file any claim. This can be done if damage awards are based on the defendant's records and are easily calculable therefrom. For example, in an employment case, the defendant's employee records could be used to identify precisely who was entitled to that pay, for how many hours, and at what rate.

*Newberg on Class Actions, supra*, § 12:15. The situation described above is analogous to that here: the putative class members' damage awards are easily calculable from information in Defendant's possession. In fact, as part of the proposed notice, each class member will be notified of the exact estimated amount he or she will receive under the settlement. And because the class members are all employees or former employees, Defendant has contact information for each class member. Thus, the parties have the ability to mail each class member a settlement check along with a short description of what the check is for and an explanation that by endorsing and cashing the check the class member will be settling his or her claims. This approach would be the simplest and most effective method for maximizing participation here. Instead, the proposed settlement uses a claims-made process which requires a class member to complete additional paperwork to receive his or her settlement check. This departs from recognized best practices.

Finally, the settlement analysis is complicated by the fact that although the parties indicate the attorneys' fees were negotiated separately and they have disclosed some emails with their mediator evidencing this, other parts of the record suggest the settlement amount was linked to, indeed contingent upon, the parties agreeing on a satisfactory award of attorneys' fees. The email containing the mediator's proposal—which the parties accepted as the framework for the

settlement—explicitly states that as part of any deal, the parties will have "to reach an agreement on a proposed attorneys' fee's award," and if they do not, "no settlement has been reached." Ex. 3 at 4, ECF No. 34-3.

Accordingly, to ensure the Court has sufficient information to decide whether the proposed settlement is fair and reasonable and not the product of a conflict of interest, the Court directs Plaintiff's counsel to provide the following: (1) an estimate as to the full value of the class members' claims (that is, the maximum amount of overtime pay and liquidated damages the class members would be entitled to if they completely prevailed at trial) supported by some analysis; (2) more detailed information concerning Plaintiff's counsel's evaluation of the fluctuating work-week method of damages calculation, including Plaintiff's counsel's estimation of its applicability here and its potential and likely impact on the litigation (citing Eighth Circuit caselaw on the subject); and (3) detailed information concerning the amount of time Plaintiff's counsel expended on this case, including: (i) documentation of the time each individual attorney or any staff member spent on this case (e.g., "6 hours spent drafting the complaint," "0.2 hours organizing discovery," etc.), along with that individual's hourly billing rate; (ii) a detailed list of the expenses incurred in the litigation (e.g., the amount spent on legal research); and (iii) the attorneys' fee agreement.[2] Plaintiff's counsel does not need to supply individual billing records, although he may do so if that is more convenient.

Although this is more information than the Court typically requires for review of an FLSA settlement, the Court has not had an FLSA case where settlement was reached so early in the

---

[2] The fee agreements are relevant to confirm Plaintiff's counsel worked on a contingency fee basis. Work performed on a contingency fee basis justifies charging a higher rate to reflect the risk assumed for no or little recovery. *See* Lester Brickman, *Effective Hourly Rates of Contingency-Fee Lawyers: Competing Data and Non-Competitive Fees*, 81 Wash. U. L. Q. 653, 655-56 (2003).

litigation (before any formal discovery or contested motion work occurred), where there were several indicia that the class members' claims could have been undersold, and where Plaintiff's counsel sought such a large award of attorneys' fees and expenses ($325,000) for a settlement reached so early in the litigation.

This information should be filed with the Court or before April 12, 2023, and may be filed ex parte to protect the privileged work product nature of the information, with the exception of the fee agreement.[3]  The Court will then rule promptly on the motion for settlement approval.

To be clear, nothing in this Order should be taken as a preliminary determination about the merits of the settlement, or to suggest the Court believes the proposed settlement is inadequate, or to suggest the Court believes the proposed settlement is actually the product of a conflict of interest.  Rather, the Court is simply doing its due diligence in light of the specific facts and circumstances presented in this case before ruling on the motion.  *See Lewis-Ramesy v. Evangelical Lutheran Good Samaritan Soc'y*, 3:16-cv-0026, 2017 WL 821656 at *4 (S.D. Iowa, Jan. 10, 2017) (noting a court must consider "a broad array of factors [in] deciding whether to approve a stipulated settlement" in an FLSA case, and these factors will vary upon the "unique circumstances" presented in that case).

**IT IS SO ORDERED.**

Date:  March 15, 2023                              /s/ Greg Kays
                                                   GREG KAYS, JUDGE
                                                   UNITED STATES DISTRICT COURT

---

[3] The Court sees no reason why the fee agreement should be filed under seal, but if counsel believes there is a compelling reason which is supported by applicable caselaw, he may move to do so.