IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

DEREK ROUSE, individually and o/b/o )
all other persons similarly situated, )
 )
           Plaintiff, )
 ) No. 4:22-cv-0204-DGK
vs. )
 )
LANGUAGE LINE SERVICES, INC., )
 )
           Defendant. )

**ORDER DENYING WITHOUT PREJUDICE PROPOSED SETTLEMENT**

This is a conditionally-certified collective action lawsuit seeking to recover unpaid wages and overtime pursuant to the Fair Labor Standards Act ("FLSA"). Now before the Court is the parties' Motion for Approval of FLSA Collective Action Settlement, ECF No. 34, the Court's Order directing Plaintiff's counsel to provide additional information about the proposed settlement, ECF No. 36, and Plaintiff's subsequent filings, ECF Nos. 37, 40-41.

Although the proposed settlement has several positive attributes—such as the total value of the settlement, which is approximately $960,000—it is not fair and reasonable in its present form. That said, the Court believes that a slightly revised settlement would merit approval. The motion for preliminary approval is, therefore, DENIED WITHOUT PREJUDICE.

**Discussion**

Where, as here, an employee has brought a lawsuit directly against an employer for violating the FLSA, any settlement must be approved by a court in order for the settlement to have any res judicata effect. *Beauford v. ActionLink, LLC*, 781 F.3d 396, 406 (8th Cir. 2015) ("After commencing litigation, employees can waive their rights only if the parties agree on a settlement amount and the district court enters a stipulated judgment."); *Copeland v. ABB, Inc.*, 521 F.3d

1010, 1014 (8th Cir. 2008) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). To approve an FLSA settlement under 29 U.S.C. § 216(b), a court must find that: (1) the litigation involves a bona fide dispute over FLSA provisions; and (2) the proposed settlement is fair and reasonable. *Lynn's Food Stores*, 679 F.3d at 1355. Further, although the exact scope of court review of attorneys' fees in conjunction with an FLSA settlement is somewhat unclear in the wake of the Eighth Circuit's recent decision in *Barbee v. Big River Steele, LLC*, where attorneys' fees and FLSA claims have been negotiated contemporaneously, a court must approve the attorneys' fees provisions to ensure they have been negotiated without regard to a plaintiff's FLSA claim, and that there was no conflict of interest between an attorney and his or her client. 927 F.3d 1024, 1027 n.1 (8th Cir. 2019).

The Court has no doubt this litigation involves a bona fide dispute over FLSA provisions, but the proposed settlement is not fair and reasonable. The most concerning features are that it is a claims-made settlement with a reversion provision, combined with what appears to be a clear-sailing provision on attorneys' fees[1] and an overly-high award of attorneys' fees.

To begin, the claims procedure—which requires each class member to submit a formal claim to receive a settlement check, Settlement ¶ 5, ECF No. 34-1, even though doing so appears to serve no purpose other than to lower participation rates—is unnecessary. As a leading treatise has observed:

> The simplest and most effective method for getting damages to class members is to distribute the funds without requiring class members to file any claim. This can be done if damage awards are based on the defendant's records and are easily calculable therefrom. For example, in an employment case, the defendant's employee records

---

[1] Under a clear sailing agreement, "the defendant agrees not to contest the amount awarded by the court presiding over the settlement as long as the award falls beneath a negotiated ceiling." William D. Henderson, Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements, 77 Tul. L. Rev. 813, 814 (2003).

> could be used to identify precisely who was entitled to that pay, for how many hours, and at what rate.

4 *Newberg on Class Actions* § 12:15 (5th ed. 2019). The situation described above is analogous to that here: the putative class members' damage awards are easily calculable from information in Defendant's possession. In fact, as part of the proposed notice, each class member will be notified of the exact estimated amount he or she will receive under the settlement. And because the class members are all employees or former employees, Defendant has contact information for each class member. Thus, the parties have the ability to mail each putative class member a settlement check along with a short description of what the check is for and an explanation that by endorsing and cashing the check the class member will be joining this litigation and settling his or her claims. This approach would be the simplest and most effective method for maximizing participation here. Instead, the proposed settlement uses a claims-made process which requires a class member to complete additional paperwork to receive his or her settlement check, a procedure which departs from recognized best practices.

The reversion provision, Settlement ¶ 6, is also problematic. Reversion provisions are disfavored in FLSA collective-action cases. *Vinsant v. MyExperian, Inc.*, No. 2:18-CV-2056-PKH, 2019 WL 2518143, at *3 (W.D. Ark. June 18, 2019) ("Reversion provisions are repugnant to the FLSA"); see 4 *Newberg on Class Actions* § 12:29 (5th ed. 2019) (noting reversionary funds have become so disfavored in class actions that their use has receded in the past decade). Courts rightly object "to such provisions in claims-made settlements because they can be used as a collusive vehicle resulting in significant fees for class counsel, a low payout by defendants, and limited benefits to the class." Michael J. Puma & Justin S. Brooks, *Navigating Developing Challenges in Approval of Class and Collective Action Settlements*, 28 A.B.A. J. Lab. & Emp. L. 325, 329 (2013). These effects are the byproduct of the "percentage-of-the-recovery" approach

used here whereby class counsel receives a percentage of the maximum settlement fund, but the defendants' actual payout to class members is based on participation rates. *Id*. If participation is low, the defendants receive a large reversion, which significantly reduces their total payout, while the plaintiffs' attorneys still receive their full fees based on the maximum settlement amount.

Granted, the impact of the reversion here is ameliorated by the fact that this case involves an FLSA settlement where putative class members must opt-in to participate, and if they choose not to participate, they could bring claims later if the statute of limitations has not run on their claims. Thus, the reversion here is not quite as bad as a reversion in a Rule 23 settlement, because the class member could theoretically recover later. Even so, the presence of this "less bad" reversion provision is concerning, and nothing in Plaintiff's counsel's supplemental filings ameliorates the Court's concern.

The reversion provision is particularly noteworthy since paragraph 9(d) of the settlement also contains a "clear sailing" agreement on attorneys' fees. *See, e.g., In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) ("[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."); *see also* 4 *Newberg on Class Actions* § 12:29 (5th ed. 2019) (noting "because class counsel's fees may be pegged to the size of the fund made available (prior to reversion), a reversionary fund may be a warning that counsel has undersold the class's claims.").

Finally, the fees and expenses sought here are quite high ($325,000) for a settlement reached so early in the litigation, particularly given that Plaintiff's counsel spent relatively little time on the case—120 hours, including non-lawyer staff time—so the fees and expenses sought

4

by Plaintiff's counsel are wildly disproportionate to the lodestar amount.[2] While the Court will not second guess the parties' determination that the fair settlement value of this case is approximately $960,000 (the $635,000 settlement fund plus $325,000 in attorneys' fees), the Court declines to approve this settlement since so much of the value is going to Plaintiff's counsel who has spent relatively little time on this case.

The motion for preliminary approval is, therefore, DENIED WITHOUT PREJUDICE. Assuming the above concerns are addressed, the Court anticipates swiftly approving a revised settlement.

**IT IS SO ORDERED.**

Date: June 6, 2023                                    /s/ Greg Kays
                                                      GREG KAYS, JUDGE
                                                      UNITED STATES DISTRICT COURT

---

[2] The effective rate Plaintiff's counsel seeks to charge is more than $2,700 an hour ($325,000 divided by 120 hours). This rate is five times Plaintiff's counsel's claimed rate of $550 an hour, an amount which is already high for this market.