IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

DEREK ROUSE, individually and o/b/o )
all other persons similarly situated, )
)
Plaintiff, )
) No. 4:22-cv-0204-DGK
vs. )
)
LANGUAGE LINE SERVICES, INC., )
)
Defendant. )

## ORDER DENYING APPROVAL OF REVISED PROPOSED SETTLEMENT

This is a collective action lawsuit in which Plaintiffs are seeking to recover unpaid wages and overtime pursuant to the Fair Labor Standards Act ("FLSA"). Plaintiffs are a putative class[1] of approximately thirty current and former employees who have worked as Implementation Specialists for Defendant Language Line Services, Inc., from July 22, 2019, to present.

On June 6, 2023, the Court declined to approve a proposed settlement, ECF No. 34, because it was not fair and reasonable. The Court also found the combination of a claims-made settlement with a reversion provision along with an overly-high award of attorneys' fees and a clear sailing provision[2] raised red flags of collusion between Defendant and Plaintiff's counsel. Order at 2–5, ECF No. 42. Now before the Court is the parties' revised proposed settlement, ECF No. 49–1, and Plaintiff's Second Motion in Support of Plaintiff's Motion for Approval of

---

[1] The Complaint proposed defining the class as "All current and former Exempt employees who were required to travel weekly and provide onsite training to LLS customers within the past three years." Compl. ¶ 24, ECF No. 1–2. The parties' Joint Motion for Approval of Notice of Class Action, Notice Procedures, and Consent to Join Form defines the putative class as "[I]ndividuals who were or are employed by Defendant in the role of implementation Specialists from July 22, 2019, to the present." ECF No. 31. The Court has tentatively approved the joint motion subject to additional briefing. Order Regarding J. Mot. for Approval of Notice, ECF No. 46.

[2] Under a clear sailing agreement, "the defendant agrees not to contest the amount awarded by the court presiding over the settlement as long as the award falls beneath a negotiated ceiling." William D. Henderson, Clear Sailing Agreements: A Special Form of Collusion in Class Action Settlements, 77 Tul. L. Rev. 813, 814 (2003).

FLSA Collective Action Settlement, ECF No. 49.

Although the revised proposed settlement is an improvement, it is still not fair and reasonable and still contains many indicia of collusion. The motion is DENIED.

**Discussion**

Where, as here, an employee has brought a lawsuit directly against an employer for violating the FLSA, any settlement must be approved by a court for the settlement to have a res judicata effect. *Beauford v. ActionLink, LLC*, 781 F.3d 396, 406 (8th Cir. 2015) ("After commencing litigation, employees can waive their rights only if the parties agree on a settlement amount and the district court enters a stipulated judgment."); *Copeland v. ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)). To approve an FLSA settlement under 29 U.S.C. § 216(b), a court must find that: (1) the litigation involves a bona fide dispute over FLSA provisions; and (2) the proposed settlement is fair and reasonable. *Lynn's Food Stores*, 679 F.3d at 1355.

**I.    Although an improvement, the revised settlement is not fair and reasonable.**

The Court discusses the most relevant changes in the revised proposed settlement below. A "red line" copy of the revised proposed settlement with all the changes is available in the record. *See* ECF No. 49–2.

The Court recognizes that the revised proposed settlement provides a marginally better outcome for class members in four ways. First, it provides that Defendant will pay its share of payroll taxes separately, from its own pocket, instead of from the settlement fund, as the initial proposed settlement indicated. This change effectively increases the amount in the gross settlement fund by approximately $24,000 and so increases the settlement's maximum *potential*

value to the class by approximately $24,000.[3] Settlement Agreement ¶ 1(a)(ii). Second, instead of deducting the cost of claims administration (which is estimated to be $6,146) from the Settlement Fund, the revised settlement reclassifies this cost as a litigation expense. Settlement Agreement ¶ 1(b). Since litigation expenses are not deducted from the settlement fund, this slightly increases the amount of money available in the settlement fund to compensate class members. Third, the revised proposed settlement effectively extends the tolling agreement by sixty days for potential class members who cannot be located or who do not participate in the settlement. Settlement Agreement ¶ 5(e). Should these class members later decide to bring FLSA claims against Defendant, they will have additional time to do so before their claims are extinguished by the statute of limitations. Fourth and most importantly, the claims-made provision which requires class members to fill out a form to participate in the settlement has been eliminated. Instead, class members will be sent a settlement allocation check contemporaneously with the notice. Settlement Agreement ¶ 5(b). Eliminating the claims-made provision should lead to higher participation rates, thereby benefitting the class as a whole.

While an improvement, the revised settlement is still not fair and reasonable. In the context of a case whose settlement value is approximately $960,000, an increase of approximately $30,000 ($24,000 plus $6,000) in the amount potentially available to the class is not much. It is an increase of three percent.

Extending the tolling agreement for non-participating class members by sixty days has theoretical value but is unlikely to make any actual difference in the number of class members who receive compensation. If a class member declines to participate in the settlement in this case, he or she is unlikely to go out and hire an attorney to pursue the claim later before the tolling expires, so the additional tolling is unlikely to make any tangible difference.

---

[3] The exact amount is $23,963.63.

3

Case 4:22-cv-00204-DGK   Document 53   Filed 09/22/23   Page 3 of 9

The biggest change in the revised settlement is the elimination of the claims-made provision. While this should increase participation rates, which is important, the revised settlement is still not fair and reasonable given the remaining indicia of collusion here discussed in detail below.

The revised proposed settlement contains a few other changes, but they are of marginal or no benefit to the class. For example, the amended settlement alters the wording of the "clear sailing" provision to state that Defendant retains the right to dispute representation made "by Plaintiffs' counsel regarding the negotiation of or the amount of attorneys' fees sought." Settlement Agreement ¶ 8(a). It is unclear to the Court what this language means or what representations Plaintiff's counsel might make regarding the negotiation of attorneys' fees that Defendant might wish to dispute.

Another minor change is modifying the payment schedule for attorneys' fees so that instead of Plaintiff's counsel being paid the entire attorneys' fee immediately at the expiration of the Opt-In period, the fee would be spread out over three payments. Settlement Agreement ¶ 5(g). The first payment would be made at the expiration of the Opt-In period and the last payment made after the settlement administrator had exhausted all reasonable efforts to ensure that each class member received his or her check. This change does not address the fundamental problem, which is that the revised proposed settlement still gives a disproportionate amount of the settlement to Plaintiff's counsel. Paying Plaintiff's counsel the same guaranteed amount over a longer period does not fix this problem.

**II.     The revised settlement reinforces the Court's concern about collusion.**

The Court previously noted the most concerning features of the settlement were that it was "a claims-made settlement with a reversion provision, combined with what appears to be a clear sailing provision on attorneys' fees and an overly-high award of attorneys' fees," all of which were red-flags of collusion. Order at 2. The revised settlement eliminates the claims-made provision but not the others, notably nothing that would endanger Plaintiff's counsel's likely appropriation of a disproportionate amount of the settlement's benefits. Hence, the Court is now more concerned than it was previously that Plaintiff's counsel may be less interested in litigating the class members' claims than leveraging them to collect a large fee for minimal work.

The Court begins it analysis with a discussion of the claims-made provision in the initial settlement. Claims-made provisions are disfavored in class-action settlements because they reduce participation rates, driving down the compensation received by absent class members. *See* 4 Newberg on Class Actions § 12:18 (5th ed. 2019) (discussing how claims-made provisions have the general effect of reducing participation rates, noting "the less class members have to do to receive money" the more likely they are to participate and receive compensation, which increases the value to the class as a whole); *see also Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 52 (D. Me. 2005) (noting that claims-made settlements "regularly yield response rates of 10 percent or less"). But a claims-made provision may be necessary in cases where the class members' contact information is unknown or where additional information from class members is needed to administer the settlement (such as their social security numbers). A claims-made provision is unavoidable, for example, in a settlement concerning defective consumer products sold over the counter where the class members' names and addresses are unknown. 4 Newberg on Class Actions § 12:18 (5th ed. 2019).

That is not the situation here. The parties agree Defendant's records contain all the information needed to identify the class members and administer the settlement. Thus, including a claims-made provision in this case never made any sense; it only served to drive down participation rates and decrease the compensation which would actually be paid out to the absent class members. While this would hurt the class, it would benefit Defendant by reducing the amount of money the Settlement Fund paid out, money that would ultimately be returned to Defendant via the reversion provision.

While including a claims-made provision in the settlement was obviously detrimental to the class, the fact that Plaintiff's counsel agreed to such a provision is not, by itself, an indictment of his handling of the negotiations. Settlement negotiations involve give-and-take, and accepting this provision may have been the price that had to be paid to get a settlement done. If the settlement ultimately reached had been fair and reasonable to the class, that would have been acceptable. The problem here is that while Plaintiff's counsel agreed to a claims-made provision which hurt the class, he also negotiated an attorneys' fees provision which guaranteed he would receive a large fee regardless of how much—or how little—the class recovered.

In an FLSA case such as this one, the attorney fee award should be, and typically is, based on the amount recovered for his or her clients, not the amount "potentially" recovered. This arrangement is preferrable because it best aligns the attorney's financial interest with the clients'; the more the clients receive, the more the attorney receives. But here Plaintiff's counsel negotiated a flat fee of approximately $317,360,[4] an amount which is approximately one-third of the *gross* value of the settlement fund (that is, the value of the settlement fund *prior to any reversion*), a figure which is untethered to the amount actually received by the class members.

---

[4] The revised proposed settlement sets the amount of attorneys' fees and expenses at $325,000. Settlement Agreement ¶ 1(b). After deducting settlement administration expenses of $6,146, the estimated attorneys' fee is $317,360. *Id*.

Three possible scenarios here illustrate the problem. In the first scenario, all the class members participate in the settlement and the entire $635,000 in the Settlement Fund is paid to the class, no money reverts to Defendant, and Plaintiff's counsel receives a fee award of $317,360. In the second scenario, only approximately half the class participates and $400,000 is paid to the class, the remaining $235,000 reverts to Defendant, and Plaintiff's counsel receives $317,360. In the third scenario, approximately ten percent of the class participates, $70,000 is paid out to the class, the remaining $545,000 reverts to Defendant, but Plaintiff's counsel still receives $317,360. This arrangement—in which Plaintiff's counsel receives a large fee no matter how the class as a whole ultimately fares—raises concerns that Plaintiff's counsel has placed his own financial interests above his clients.

While the revised settlement eliminates the claims-made provision, it still contains a reversion provision, a flat-fee attorney award, and a clear sailing provision, all of which are disfavored, particularly when used in combination as they are here, and suggest that Plaintiff's counsel may have succumbed to a conflict of interest. *See, e.g.*, *Int'l Precious Metals Corp. v. Waters*, 530 U.S. 1223, 1223, (2000) (O'Connor, J., statement respecting the denial of the petition for a writ of certiorari) (observing that fee awards based on the size of a settlement fund prior to reversion "decouple class counsel's financial incentives from those of the class, increasing the risk that the actual distribution will be misallocated between attorney's fees and the plaintiffs' recovery" and provide "defendants with a powerful means to entic[e] class counsel to settle lawsuits in a manner detrimental to the class"); *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015) (noting that "parties creat[ing] a reverter that returns unclaimed fees to the defendant" is a "subtle [sign] that class counsel have allowed pursuit of their own self-interests . .

. to infect the negotiations").[5]  While the revised proposed settlement is an improvement, it still contains a reversion and is not fair and reasonable.

Going forward, while the Court will keep an open mind with respect to any proposed settlement, it will carefully review it.  It is difficult to imagine the Court approving any proposed settlement where Plaintiff's counsel's fee award is based on the gross value of the settlement fund prior to any reversion, particularly where there is a clear sailing provision on attorneys' fees.[6]  The case law and commentary is clear that this arrangement is disfavored as a conflict of interest.

After reviewing the record, the Court is concerned that Plaintiff's counsel may be more interested in settling this case on terms favorable to himself than in actively litigating this case, which is how good settlements are typically won.  As best the Court can tell from the existing record, Plaintiff's counsel has performed relatively little work on this case, particularly when time spent working on a settlement or seeking settlement approval is excluded.  And the work performed thus far does not appear to justify Plaintiff's counsel's proposed $550 an hour billing rate.[7]

The motion for preliminary approval is DENIED.

---

[5] The Court recognizes there is a colorable argument that a reversion provision can serve a legitimate purpose in an FLSA case such as this one.  One could argue that if some class members choose not to participate in the settlement, then the money the defendant has set aside to pay their claims should be refunded to the defendant in anticipation of satisfying claims that may be made by these class members in the future.  This argument is not persuasive because it is very unlikely that a non-participating class member will subsequently file his or her own claim before the statute of limitations expires.  Instead of this money going to compensate injured class members, it will almost certainly remain in the defendant's pocket.  Thus, a reversion provision in a case such as this one just creates a mirage of fairness.

[6] Of course, if the parties agree on a reasonable award of attorneys' fees and there are no indications that this agreement is the produce of a conflict-of-interest or collusion, then the Court should respect their agreement because it prevents unnecessary litigation.  *See Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.")).  But that is not the case here where the record contains several indicia of collusion.

[7] For example, counsel's proposed scheduling order was confusing and contained so many typographic errors that the Court had to send it back for clarification and revision, something it has never had to do with respect to a scheduling order.  *See* Order Denying Without Prejudice Proposed Scheduling Order, ECF No. 12.

**IT IS SO ORDERED.**

Date: September 22, 2023   /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT